**Earl GEIGER, Plaintiff,**

v.

**John T. TOKHEIM and Mary Tokheim, Defendants.**

**No. C 93–4019.**

United States District Court,
N.D. Iowa,
Western Division.

Feb. 1, 1996.

John D. Mayne of Mayne & Mayne, Sioux City, Iowa, for Plaintiff Earl Geiger.

Steven D. Wolf and Terry M. Anderson, Haupman, O'Brien, Wolf & Lathrop, Omaha, Nebraska, for Defendants John T. Tokheim and Mary Tokheim.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND ..................... 784
II. STANDARDS FOR SUMMARY JUDGMENT ............................... 785
III. FACTUAL BACKGROUND ........................................... 787
   A. Undisputed Facts ............................................. 787
   B. Disputed Facts............................................... 788
IV. LEGAL ANALYSIS ............................................... 788
   A. Issue Preclusion—Commercial Reasonableness ........................... 789
      1. Iowa law........................................... 790
      2. Federal law ......................................... 790
      3. Commercial reasonableness ................................. 790
      4. The bankruptcy court's findings ............................. 793
         a. Iowa issue preclusion ................................. 794
         b. Federal issue preclusion ............................... 795
      5. Material fact questions ................................... 795
   B. Issue Preclusion–Tortious Interference With Prospective Contract ........ 796
V. CONCLUSION ................................................. 798

This case involves the sale of bank stock in accordance with a reorganization plan approved by a bankruptcy court and warrants the court's review of the determinations made by the bankruptcy court, as well as an examination of the policies and application of Section 9–507(2) of the Uniform Commercial Code, in order to effectively analyze the applicability of the familiar doctrine of issue preclusion. Defendants moved for summary judgment on the issues of commercial reasonableness and tortious interference with a prospective contractual relationship, arguing that these issues had been previously raised and rejected by the bankruptcy court. Plaintiff resisted this motion, contending that the bankruptcy court failed to make determinations on these issues, finding only that the public sale of this stock complied with the reorganization plan approved by the bankruptcy court.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

The circumstances of this case involve the actions of Defendant John T. Tokheim and Mary Tokheim ("the Tokheims") in the sale and subsequent acquisition of the majority of stock in the Farmers State Bank of Charter Oak, Iowa. Plaintiff Earl Geiger, one of the trustees of the John W. Van Dyke Trust, filed his original petition in this matter in the Iowa District Court for Woodbury County on January 22, 1993, alleging nine counts, including a federal deposit insurance act violation, a claim that the Tokheims wrongfully and unlawfully auctioned the Bank's stock in a "commercially unreasonable manner," a breach of fiduciary duty, breach of a duty to act in good faith, tortious interference, and injury to a depository institution.[1] On February 11, 1993, the Tokheims removed the

---

1. Originally, there were two plaintiffs in this cause of action, namely, Earl Geiger and Vernon Henjes, both of whom were trustees of the John W. Van Dyke, Jr. standby trust. However, in an order filed on July 10, 1995, Chief Magistrate Judge John A. Jarvey granted plaintiffs' motion to amend to terminate Vernon Henjes as a plaintiff in this lawsuit. Thus, Earl Geiger remains as the sole plaintiff in this lawsuit.

action to this court based on diversity of jurisdiction pursuant to 28 U.S.C. § 1441. On February 19, 1993, the Tokheims filed their answer.

On March 16, 1993, the Tokheims moved to dismiss all of Geiger's claims, except Count VIII, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief could be granted. On December 30, 1993, Judge Donald O'Brien granted the Tokheims' motion in part and dismissed all of Geiger's claims except those found in Count III and the related prayer for damages found in Count VIII. Geiger contends in Count III of his second amended complaint that the Tokheims wrongfully and unlawfully auctioned off stock in a bank in a commercially unreasonable manner in violation of Iowa Code §§ 554.9504(3) and 554.9507(2). On April 7, 1994, Chief Bankruptcy Judge Irvin N. Hoyt issued an Order Determining Claim in Part and Setting Deadline for Filing Administrative Expense Claim and Computations of Interest in *In re John W. Van Dyke*, Bkr.Case No. L–88–01173S (Bankr.S.D.Iowa). On June 10, 1994, Judge Hoyt issued in the same case a Memorandum of Decision Re: Determination of the Claim of John Tokheim and Mary Tokheim. In both his order of April 7, 1994 and his memorandum of June 10, 1994, Judge Hoyt found the sale of the stock was conducted in compliance with the reorganization plan, confirmed by the bankruptcy court.

The Tokheims filed a motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that as a result of the April 7, 1994 order and the June 10, 1994 memorandum, both by Judge Hoyt, Geiger's claim is barred by operation of the doctrine of res judicata. Geiger resisted this motion on March 16, 1995. On May 24, 1995, this court denied the Tokheims' motion to dismiss, concluding that the Tokheims failed to satisfy the requirements of the doctrine of issue preclusion under either Iowa or federal law. The court found that it could not determine from Judge Hoyt's Order and his subsequent Memorandum if the issue before the court—whether the sale of the Stock was commercially reasonable—was raised and ad-

dressed in the prior litigation in the bankruptcy court.

On August 16, 1995, Geiger moved to amend and substitute his complaint, and Judge Jarvey granted this motion on September 18, 1995. The Tokheims filed an answer to this amended complaint on September 29, 1995. Also, on September 29, 1995, the Tokheims filed a motion for summary judgment, along with a memorandum in support of their motion and a statement of undisputed facts. The Tokheims also filed an addendum to their memorandum in support of motion for summary judgment and an attachment to this addendum. On October 17, 1995, Earl Geiger filed a resistance to the Tokheims' motion. Lastly, upon receiving the court's permission, the Tokheims filed an amended statement of undisputed facts in support of their motion for summary judgment on November 17, 1995. Before turning to the factual background for the pending motion, the court must first consider the standards applicable to disposition of a motion for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

■ The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for a summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[2] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Geiger, and give Geiger the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz,* 28 F.3d at 796; *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert.*

*denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving parties, the Tokheims, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The Tokheims are not required by *Rule 56* to support their motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Geiger is required under *Rule* 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir. 1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

---

2. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison*, 28 F.3d at 66.

In *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Geiger fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then the Tokheims are "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for Geiger, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the Tokheims' motion for summary judgment.

## III. FACTUAL BACKGROUND

### A. Undisputed Facts

The record reveals the following facts are undisputed. In the early 1980s, the Tokheims owned a majority of stock in the Farmers State Bank in Charter Oak, Iowa ("the Bank"). The Tokheims agreed to sell that stock to John W. Van Dyke, Jr. Upon the sale of this stock, the Tokheims retained a security interest in the stock they sold to Van Dyke for a purchase price of $900,-000.00, to be paid in annual installments. After Van Dyke defaulted on his installment payment obligation, Tokheim commenced collection proceedings to obtain the delinquent installment payments and a return of the capital.

Following a Chapter 11 proceeding in the United States Bankruptcy Court for the Northern District of Iowa, Van Dyke obtained the bankruptcy court's confirmation of an amended Plan of Reorganization ("the Plan"), which created the John W. Van Dyke Standby Trust ("the Trust"). This trust was established for the purpose of distributing the assets owned by Van Dyke following his bankruptcy. At the time of his bankruptcy, Van Dyke owned 1,650 shares ("the Stock") in the Bank. The terms of the Plan required the Trust to make a good-faith effort to sell his bank shares by November 20, 1990. If the Stock was not sold by this time, the Plan gave the Tokheims the right, as secured creditors, to sell the Stock at a public auction. The Plan further provided the proceeds of the sale of the Stock were to be applied, after expenses, to satisfy Van Dyke's unpaid obligations to the Tokheims. After failing to sell his bank shares by November 20, 1990, Van Dyke transferred possession in the Stock to the Tokheims on March 20, 1991. On March 22, 1991, the Tokheims caused the Stock to be auctioned on the steps of the Woodbury County Courthouse. The Tokheims were the sole bidders at the auction and purchased the Stock for the sum of $230,000.00.

Geiger filed suit in January 1993, raising several claims arising from the sale and subsequent purchase of the Stock at the public auction. Judge O'Brien dismissed all of Geiger's claims except for his claim that the Tokheims wrongfully and unlawfully auctioned the Bank's stock in a "commercially unreasonable" manner, and a claim for damages resulting from such a "commercially unreasonable" sale. Subsequent to the public auction, the co-trustees of the Van Dyke Standby Trust, Geiger's predecessor in interest, filed a motion to determine Tokheim's claim in the United States Bankruptcy Court. As part of that motion, Geiger's predecessor in interest sought damages based upon the manner in which the public auction was con-

ducted. The Bankruptcy Court found the public sale to be in compliance with the Plan.

### B. Disputed Facts

There are no disputed facts in the summary judgment record. Indeed, Geiger asserts that the Tokheims' Statement of Undisputed Facts does not indicate any facts which were not already assumed by the court to be true when it overruled the Tokheims' motion to dismiss on May 24, 1995. Geiger claims the Tokheims "continue to rely on the same issue preclusion theory allegedly arising from the same bankruptcy court order ...," and this court previously concluded that the Tokheims had failed to satisfy the requirements of the doctrine of issue preclusion. (Resistance to Mot. for Summ.J. ¶ 2.). The court could not determine from Judge Hoyt's Order and subsequent Memorandum if the issue of whether the sale of the Stock was commercially reasonable "was raised and addressed in prior litigation" in the bankruptcy court. (Order Denying Mot. to Dismiss, p. 11.). Having discussed the factual background of this litigation, the court turns to the disposition of the Tokheims' motion for summary judgment.

### IV. LEGAL ANALYSIS

The Tokheims primarily assert the same arguments raised in their motion to dismiss—that the public sale of the Stock was commercially unreasonable, which was denied by this court, except that they maintain that a review of the record as a whole reveals that in the bankruptcy hearing, Judge Hoyt did, in fact, find that the public sale of the Stock was commercially reasonable. To support this assertion, the Tokheims have included in their Attachment to Addendum to Memorandum in Support of their Motion for Summary Judgment a copy of the transcript of the evidentiary hearing in bankruptcy court. Also, in their amended statement of undisputed facts, they have noted specific references in the transcript which, they believe, support their claim of issue preclusion.

In addition to his claim that the public sale was commercially unreasonable, in his amended complaint and in his resistance to the Tokheims' motion for summary judg-

ment, Geiger contends that the Tokheims tortiously interfered with a "prospective contractual relationship." Geiger argues an auction is an invitation to contract, and the public auction created a "prospective contractual relationship" between Van Dyke or Van Dyke's estate and potential bidders. (Geiger's Amended and Substituted Complaint ¶ 13.). Thus, Geiger asserts that the Tokheims intentionally interfered with Van Dyke's prospective contractual relationship with potential bidders by threatening potential bidders with a civil lawsuit against the Bank in order to ensure the Tokheims would be the sole bidder at the sale. (Geiger's Amended and Substituted Complaint ¶ 15.). Geiger claims that Judge Hoyt did not address this issue in his ruling, and thus, he should not be precluded from raising it here.

In response, the Tokheims argue that there was no "prospective contract" between Van Dyke or Geiger and any potential bidder with which to interfere. They maintain that the only "contract" created at the sale was the agreement by the winning bidder to pay the bid price, which would ultimately be paid to the Tokheims as secured parties. The Tokheims argue Judge O'Brien found that the district court did not have subject matter jurisdiction over any questions concerning alleged tortious interference at or surrounding the sale. Rather, Judge O'Brien found that such claims should be brought before the bankruptcy court. Subsequent to Judge O'Brien's order, Geiger did go to the bankruptcy court and did raise the same allegations made in the amended complaint. The Tokheims assert that Geiger's claim of "tortious interference" in his amended complaint is merely a guise for claims that the Tokheims' alleged misconduct or "threats and intimidation" caused the sale price to be unreasonably low, thereby damaging the Van Dyke estate—claims raised and addressed in the bankruptcy court hearing. Thus, the Tokheims claim that Geiger's tortious interference claim is likewise precluded because Geiger's predecessor raised and addressed this issue in prior litigation before Judge Hoyt in bankruptcy court, and Judge Hoyt found that the sale was conducted in compliance with the Plan. With both Geiger's and

the Tokheims' general assertions in mind, the court proceeds to the evaluation of each issue on the merits.

## A. Issue Preclusion—Commercial Reasonableness

The normal rules of res judicata and collateral estoppel apply to decisions of bankruptcy courts. *See Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). However, it would appear that the court must determine whether federal or state law determines the collateral estoppel effect of the bankruptcy court's order and subsequent memorandum in this diversity action. The Eighth Circuit has clearly held that "'cases from [this circuit] have consistently concluded that collateral estoppel in a diversity action is a question of substantive law controlled by state common law.'"[3] *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 617 (8th Cir.1994) (quoting *Lane v. Sullivan*, 900 F.2d 1247, 1250 (8th Cir.), *cert. denied*, 498 U.S. 847, 111 S.Ct. 134, 112 L.Ed.2d 101 (1990)); *see also Iowa Elec. Light & Power Co. v. Mobile Aerial Towers, Inc.*, 723 F.2d 50, 52 (8th Cir.1983); *Gatzemeyer v. Vogel*, 589 F.2d 360, 362 (8th Cir.1978). The logic supporting

this conclusion is that the application of state law in a diversity case such as this results in consistency of application, since the same law would be applied regardless of whether the case has been removed to federal court or remained in state court.

On the other hand, the Eighth Circuit has also declared that a federal court should apply federal law to determine the preclusive effect of a prior federal judgment in a case based upon federal question jurisdiction. *See Jaramillo v. Burkhart*, 999 F.2d 1241, 1245 (8th Cir.1993) (even if the second suit is in federal court because of diversity, federal law still governs the issue of res judicata if in the prior action, the court rendered judgment on a claim arising under federal law); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1012 (8th Cir.1990); *Poe v. John Deere Co.*, 695 F.2d 1103, 1105 (8th Cir.1982); *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 243 n. 2 (5th Cir.1983); *see generally* 18 Wright Miller and Cooper, Federal Practice and Procedure § 4472 (1981). The rationale behind this rule is that federal courts should determine the preclusive effect of their own judgments.

Here, because the court concludes that the result in this matter would be the same under either Iowa or federal law, the court

---

**3.** Although the Eighth Circuit has held consistently that state common law controls the issue of collateral estoppel in a diversity action in federal court, there is a split in the circuits concerning this issue. Some circuit courts have reached the same conclusion as the Eighth Circuit. *See Donegal Steel Foundry Co. v. Accurate Prods. Co.*, 516 F.2d 583, 587 & n. 5 (3d Cir. 1975) (citing *Murphy v. Landsburg*, 490 F.2d 319 (3d Cir.1973), *cert. denied*, 416 U.S. 939, 94 S.Ct. 1941, 40 L.Ed.2d 289 (1974), and *Gambocz v. Yelencsics*, 468 F.2d 837, 841 n. 4 (3d Cir.1972)); *Gasbarra v. Park–Ohio Indus., Inc.*, 655 F.2d 119, 120–22 (7th Cir.1981); *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982); *Answering Service, Inc. v. Egan*, 728 F.2d 1500, 1505–06 (D.C.Cir.1984). Other circuits, namely the Fourth, Fifth, Sixth, and Eleventh Circuits, have applied federal law to the question of res judicata or collateral estoppel of prior federal court proceedings, regardless of the basis of federal jurisdiction in either the prior or present action. *See Harnett v. Billman*, 800 F.2d 1308, 1312–13 (4th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290

(5th Cir.1995) (even if the federal court's judgment is based on state law, federal law determines the judgment's preclusive effect); *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir.1989) (when a federal court renders a decision in a diversity case, the decision's preclusive effect is governed by federal law); *Silcox v. United Trucking Serv., Inc.*, 687 F.2d 848, 852 (6th Cir.1982); *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985). The Tenth Circuit has rendered somewhat inconsistent results, finding in some instances that state law will apply in diversity cases, *see Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383 (10th Cir.1987), and in other instances, applying federal preclusion law except for those aspects which are clearly substantive. *See Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271 (10th Cir.1989) (citing *Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329 (10th Cir.1988)) ("as a general rule, we apply federal law to the res judicata issue in successive diversity actions, but federal law will incorporate state law when the issue is more distinctly substantive, as with the concept of 'privity.'").

need not determine whether state or federal law applies.

### 1. Iowa law

There are two types of res judicata: claim preclusion and issue preclusion. The Iowa Supreme Court has articulated the differences between these two doctrines, indicating that

> [i]ssue preclusion, also called collateral estoppel, prevents relitigation of already litigated factual issues which were essential to an earlier judgment on a different cause of action binding on the same parties. Claim preclusion, on the other hand, prevents relitigation of all issues, whether raised or not, following judgment on the same cause of action.

*Iowa Elec. Light & Power Co. v. Lagle,* 430 N.W.2d 393, 397 (Iowa 1988); *see B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 286 (Iowa 1976) (noting that res judicata in its claim preclusion form is a bar to further litigation of a claim, while issue preclusion is a bar to further litigation of a specific issue) (citing *Goolsby v. Derby,* 189 N.W.2d 909, 913 (Iowa 1971)).

■■■■ The Tokheims' motion for summary judgment raises the doctrine of collateral estoppel or issue preclusion. The purpose of the doctrine of issue preclusion is to prevent relitigation of issues raised and resolved in a previous action. *See Hall v. Barrett,* 412 N.W.2d 648, 650 (Iowa Ct.App. 1987). Four prerequisites for issue preclusion are:

(1) the issue concluded must be identical;

(2) the issue must have been raised and litigated in the prior action;

(3) the issue must have been material and relevant to the disposition of the prior action; and

(4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Israel v. Farmers Mut. Ins. Assoc. of Iowa,* 339 N.W.2d 143, 146 (Iowa 1983); *see also Yancy v. McDevitt,* 802 F.2d 1025, 1027–28 (8th Cir.1986) (citing *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981)); *Lagle,* 430 N.W.2d at 397; *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981).

### 2. Federal law

■■■■ Alternatively, under federal law, the court would reach the same result. The doctrine of issue preclusion provides that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in subsequent suits based on a different cause of action involving a party to the prior litigation. *Plough v. West Des Moines Community Sch. Dist.,* 70 F.3d 512, 514 (8th Cir.1995) (citing *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980), in turn, citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)); *see also United States v. Gurley,* 43 F.3d 1188, 1198 (8th Cir.1994) (quoting *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)), *cert. denied,* —— U.S. ——, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995). Like Iowa law, under federal law there are four prerequisites for issue preclusion:

(1) the issue is identical to one in a prior adjudication;

(2) there was a final judgment on the merits;

(3) the estopped party was a party or in privity with a party to the prior adjudication; and

(4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Arkla Exploration Co. v. Texas Oil & Gas Corp.,* 734 F.2d 347, 356 (8th Cir.1984) (quoting *Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir.1979)), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985); *see also Gurley,* 43 F.3d at 1198.

### 3. Commercial reasonableness

■■■ In support of their motion to dismiss, which was previously denied by this court, the Tokheims relied on the language in the order and subsequent memorandum by Judge Hoyt in the bankruptcy court. In his order of April 7, 1994, Judge Hoyt stated that "there has been no showing by the Co-trustees that said sale was conducted con-

trary to the confirmed plan...." In his subsequent memorandum of June 10, 1994, Judge Hoyt stated:

[The Tokheims] further argued that the Charter Oak Bank was sold in a commercially reasonable manner and that the sale complied with applicable state and federal regulations.

The co-trustees [Plaintiffs] filed their brief on March 24, 1994. They argued that the Charter Oak Bank stock was not sold in a commercially reasonable manner, and therefore, the trust should be entitled to a fair market value credit of $350,000.00 against the Tokheims' claim rather than a credit of $230,000.00 for what the Tokheims actually paid for the bank shares at the auction. The co-trustees further argued that the Tokheims are not entitled to interest on the balance of their claim remaining after the bank stock sale because that portion of their claim is unsecured and because the deficiency resulted from the irregular sale of the bank stock. The co-trustees further stated that simple interest accrued only on that portion of the Tokheims' claim that was secured by the bank stock. Finally, the co-trustees argued the Tokheims are not entitled to attorney's fees and costs as an administrative expense because the estate did not benefit from Attorney Anderson's post-confirmation expenses.

Upon receipt of evidence at the April 6, 1994 hearing, the Court concluded that the Tokheims' claim should not be reduced by any alleged damages arising from the sale of Charter Oak Bank stock because the sale was conducted in compliance with the plan.

*In re Van Dyke*, No. L–88–01173S, at 8, 1994 WL 881855 (Bankr.S.D.Iowa June 10, 1994). After analyzing Judge Hoyt's order and memorandum, this court denied the Tokheims' motion to dismiss and found that Judge Hoyt's decision had no preclusive effect because the court could not determine from the record before it whether the issue involved in this litigation was raised and addressed in the prior litigation. Specifically, the court noted that

[i]t is unclear from Judge Hoyt's decision whether in order to rule on the Tokheims'

claims in the bankruptcy case he had to determine the merits of [Geiger's] objection that the sale of the Bank stock was conducted in a commercially unreasonable manner, or merely had to determine whether the stock sale was conducted in compliance with the bankruptcy plan. The bankruptcy plan, set forth in Judge Hoyt's order, did not require that the sale be conducted in a commercially reasonable manner. Furthermore, Judge Hoyt did not discuss any aspects of the sale or conduct an analysis of the commercial reasonableness of the sale. Therefore, because the court concludes that the Tokheims have failed to demonstrate that the issues involved in this action are identical to those litigated in John W. Van Dyke, Jr.'s bankruptcy action, issue preclusion does not bar the litigation of the issue in this case.

(Order Denying Tokheims' Mot. to Dismiss, pp. 9–10.).

Subsequent to the court's order denying their motion to dismiss, the Tokheims moved for summary judgment on the same ground of issue preclusion. However, here, they filed the transcript from the bankruptcy hearing for the court's review, claiming that a review of the transcript reveals that the issue of commercial reasonableness was raised and addressed in the bankruptcy hearing. The Tokheims contend that Judge Hoyt determined that the sale was commercially reasonable; therefore, his decision should have preclusive effect on litigation before this court. Also, the Tokheims maintain that Geiger has raised no new issues in his amended complaint that were not already raised in the prior action. The Tokheims argue that Geiger's complaint involves allegations of the Tokheims' conduct in accordance with the Plan, and further assert that Judge Hoyt found that their conduct was in compliance with the Plan. Lastly, the Tokheims maintain that, under Iowa law, a sale held in compliance with a court order is conclusively presumed to be commercially reasonable. Because Judge Hoyt found that this sale was in compliance with the reorganization plan ordered by the bankruptcy court, even if he didn't find the sale to be "commercially rea-

sonable," the Tokheims allege that this sale must be conclusively presumed to be commercially reasonable.

The commercial reasonableness of a sale of collateral is ordinarily a question of fact. *John Deere Leasing Co. v. Fraker*, 395 N.W.2d 885, 887 (Iowa 1986); *United States v. Conrad Publishing Co.*, 589 F.2d 949, 954 (8th Cir.1978). The burden of proving commercial reasonableness is on the secured party. *John Deere Leasing Co.*, 395 N.W.2d at 888. However, if the sale of collateral is completed in accordance with a judicial proceeding, the sale is conclusively presumed to be commercially reasonable. *See* Iowa Code § 554.9507(2).

Specifically, Iowa Code § 554.9507(2) provides as follows:

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if the secured party sells at the price current in such market at the time of the secured party's sale or if the secured party has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold the secured party has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. *A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable*, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any

disposition not so approved is not commercially reasonable.

Iowa Code § 554.9507(2) (emphasis added). Although Iowa law is not particularly helpful in interpreting this provision of the Code,[4] this sentence has been included in many state codes patterned after the Uniform Commercial Code ("UCC") and has been interpreted in case law generated in various state courts. *See Cramton v. Altus Bank*, 596 So.2d 902, 905 (Ala.1992) (where the disposition of collateral has been approved in a judicial proceeding, the disposition is conclusively deemed to be commercially reasonable). In *Bryant v. American Nat'l Bank & Trust Co. of Chicago*, the district court discussed the rationale behind this presumption, noting that

> [t]his interpretation of § 9–507(2) squares with the general policy behind Article 9 of the Uniform Commercial Code. As one commentator described it, Article 9 attempts to impede dishonest dispositions of the collateral without strangling honest transactions with red tape. Thus, § 9–504 mandates a disposition which is commercially reasonable in every aspect. But to lighten the burden on the creditor, § 9–507(2) suggests "various methods to which secured parties may resort to protect themselves" from later claims that their disposition was unreasonable. One of these methods is to procure approval in a judicial proceeding. If the approval emanates from a full and fair hearing, a court which "collaterally" reviews the disposition's reasonableness should not attempt to investigate the individual aspects of the sale, except to determine whether the creditor followed the approved procedures or obtained the approval through overreaching or collusion. To investigate more deeply is to subvert the drafters' intention that judicial approval should be conclusive on the issue of commercial reasonableness.

**4.** The only Iowa case discussing this conclusive presumption of commercial reasonableness in a judicially-approved sale is *Klooster v. North Iowa State Bank*, 404 N.W.2d 564 (Iowa 1987). In *Klooster*, as its defense, the bank claimed that the challenged procedure was approved by court order, and thus, was conclusively presumed to be

commercially reasonable. *Id.* at 571. The court, however, found that the bank had no defense pursuant to Iowa Code § 554.9507(2) because the plaintiffs' claim was not based on a violation of the U.C.C. *Id.* Thus, the Iowa Supreme Court did not discuss the application of this presumption.

*Bryant v. American Nat'l Bank & Trust Co. of Chicago,* 407 F.Supp. 360, 364–65 (N.D.Ill. 1976) (key to judicial approval was whether all parties had been given the opportunity to appear and voice their objections to a proposed sale); *see also Cramton,* 596 So.2d at 905 (finding that any objection to the commercial reasonableness of a secured party's disposition of the collateral must come during the judicial proceeding in which approval of the disposition is sought, unless the objection is to the procedure or some overreaching, collusion, or similar malfeasance on the part of the secured party); *Nassau Trust Co. v. Bayer,* 119 A.D.2d 814, 501 N.Y.S.2d 442, 443 (1986) (sale of the collateral is conclusively deemed commercially reasonable under U.C.C. 9–507(2) since it was sold pursuant to a Tennessee court order; mere assertion without evidence or facts supporting otherwise will not survive summary judgment). *Cf. Executive Bank of Fort Lauderdale, Florida v. Tighe,* 75 A.D.2d 574, 426 N.Y.S.2d 585, 586 (1980) (9–507(2) is not controlling where the parties were not given a full and fair opportunity to contest the propriety of the sale); *Rhode Island Hosp. Trust Nat'l Bank v. National Health Found.,* 119 R.I. 823, 384 A.2d 301, 304 (1978); *Ford Motor Credit Co. v. Traffic Transport Eng'g, Inc.,* 388 N.W.2d 281, 283 (Mich.Ct.App.1986) (conclusive presumption which attaches to judicially-approved sales was intended to further the general intent behind Article 9 of the UCC, which attempts to "impede the dishonest disposition of collateral without overly restricting honest transactions with unnecessarily cumbersome procedures) (citing *Bryant,* 407 F.Supp. at 364–65)).

### 4. *The bankruptcy court's findings*

Geiger has cited specific points in the transcript of the bankruptcy hearing to support his argument that Judge Hoyt did, in fact, find that the sale was commercially reasonable. At the conclusion of the hearing, Judge Hoyt stated

> In looking at this what you really have to look to is the plan and the modified plan. And when you look to that, which is basically under the treatment of Class 14, which is the Tokheim claim, that is what ... we'd have to look at. And that, of

course, becomes the binding agreement amongst the parties.

And that particular provision just simply provides that within a year and thirty days after confirmation the Tokheims are obligated within that thirty-day period after the one year the debtor had to sell the bank ... they are obligated within that thirty-day period to have an auction. And there aren't any other conditions that are attached to that wording.

What we have so far today is we've got a showing that the Tokheims gave notice of the sale. They did that by the newspaper advertisements and I think they also ... the evidence would be that Mr. Anderson supplied information as to the conditions or the conduct of the sale but he didn't supply information as to the ... condition of the bank. And those were referred to the counsel for the bank....

The only requirement of the plan was ... was that an auction be conducted. That was the bargained-for plan treatment and that's what took place....

So what we have here is that the only testimony as to the purchase price was by your expert, Mr. Fritz. And using his figures it would appear that the price obtained is not unreasonable. That the bid was two hundred and thirty thousand dollars. And somewhere within his calculations, taking into consideration unpaid interest and a floating rate which nobody has really given us the figures ... but he comes in at somewhere between [$201,000.00] and [$220,000.00] or something like that.

But the bottom line is simply what we've got here is what we paid for under the plan. We've got an auction that was conducted within thirty days, and that was the obligation. The commercial reasonableness, while it makes for a good sounding argument, wasn't really bargained for. And I don't know how you could accomplish ... There certainly wouldn't be sufficient time to do a due diligence examination, prepare a prospectus and do all of the things that you now say that should have been done within the allotted thirty day period. It would be impossible.

So, under the circumstances it would appear that the Tokheims have done everything that they were obligated to do; they conducted an auction within thirty days; they made disclosures; the disclosures … while the contention is may have hindered bidding, we have no testimony other than Mr. Claussen's which simply said he didn't want to buy a lawsuit. Whether he understood the full ramifications of what he was or was not buying we don't know.

But in any event, we would find that at this time the sale was conducted and it was commercially reasonable.

And I don't like to use the term commercially reasonable because I don't think that's the criteria that this is to be judged by. I think it is to be judged by the plan treatment.

So that will be the ruling of the court.

(Transcript, April 6, 1994 Evidentiary Hearing before Judge Hoyt, pp. 112–16.). Thus, having reviewed the conclusions of Judge Hoyt in the prior litigation, the court turns to the application of the four prerequisites for issue preclusion under Iowa law to this case.

### a. Iowa issue preclusion

The first two prerequisites mandate that the issue concluded in the prior litigation is identical to the issue currently before the court and that the issue was raised and litigated in the prior action. *See Israel,* 339 N.W.2d at 146; *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123. Here, the issue before the court is whether the sale of the Stock was commercially reasonable. Although in the order denying the Tokheims' motion to dismiss the court concluded that the prior litigation had no preclusive effect, the court came to this conclusion because it could not determine from the record whether the issue of commercial reasonableness had been raised and addressed in the prior litigation. After reviewing the transcript of the hearing, it is clear that Judge Hoyt did conclude that the sale was commercially reasonable. (Transcript, p. 116.). Because the commercial reasonableness is precisely the issue before this court, it is evident that the issues were identical and that this issue had been raised and litigated in the prior action.

The next requirement of issue preclusion under Iowa law is that the issue was material and relevant to the disposition of the prior action. *See Israel,* 339 N.W.2d at 146; *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123. Here, neither party articulates why the issue of commercial reasonableness is or is not material and relevant to the disposition of the prior action. However, Iowa Code § 554.9507(2) provides that a sale that has been approved in a judicial proceeding shall conclusively be deemed commercially reasonable. *See* Iowa Code § 554.9507(2). Thus, in order to find that the sale should "conclusively" be deemed commercially reasonable, a sale should be conducted in compliance with the plan which had been approved in a judicial proceeding, in which all parties had fair notice and opportunity to be heard. This sale was approved in a judicial proceeding prior to its occurrence. All parties to the Plan agreed to that public sale. There have been no allegations of misconduct in conjunction with the proceeding in which judicial approval for the Plan was obtained. Therefore, when Judge Hoyt found that the sale was commercially reasonable, but preferred to use the words "in compliance with the Plan," it is logical that he would find that the criteria of being in compliance with the Plan was more appropriate because if the sale was in compliance with the Plan, it is conclusively deemed "commercially reasonable" under Iowa Code § 554.9507(2). Thus, because one determination necessarily involved the other determination, the issue of commercial reasonableness was clearly material and relevant to the disposition of the prior action.

Lastly, the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. *See Israel,* 339 N.W.2d at 146; *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123. Here, although Judge Hoyt found that "commercial reasonableness" was not the criteria, but rather "compliance with the plan," Judge Hoyt found that proper notice was given for the sale and that the sale price was reasonable. (Transcript, pp. 112–16.). Both are criteria contemplated by Iowa Code § 554.9504(3) in evaluating the commercial reasonable-

ness of a sale of collateral and recognized in the Iowa courts as factors to consider in determining commercial reasonableness. *See Klooster*, 404 N.W.2d at 571. Although Judge Hoyt did not find commercial reasonableness to be the appropriate criteria, he nevertheless appeared to treat compliance with the Plan and commercial reasonableness interchangeably in his evaluation of whether Geiger had a cause of action against the Tokheims. Thus, because Judge Hoyt had to evaluate much of the same criteria in determining whether Geiger had a cause of action against the Tokheims for noncompliance with the Plan as he would in the absence of a judicially approved plan, the court construes Judge Hoyt's determination that the sale was commercially reasonable to be necessary and essential to his resulting judgment. Without the findings that Judge Hoyt made, he could not have drawn the conclusion that Geiger had no claim against the Tokheims for their conduct surrounding the sale of the Stock. Therefore, based on an examination of the four prerequisites, under Iowa law, the court concludes the bankruptcy court's decision precludes this court's consideration of the issue of commercial reasonableness.

### b. Federal issue preclusion

Under federal law, there are four prerequisites for issue preclusion. The first prerequisite—that the issue is identical to one in a prior adjudication—is the same as the first prerequisite under Iowa law. *Gurley*, 43 F.3d at 1198; *Arkla Exploration Co.*, 734 F.2d at 356. As discussed above, the issue of commercial reasonableness currently before the court is identical to the issue raised in the bankruptcy court. The second requirement for issue preclusion under federal law is that there was a final judgment on the merits in the prior action. *Gurley*, 43 F.3d at 1198; *Arkla Exploration Co.*, 734 F.2d at 356. The bankruptcy hearing determined the claim of the Tokheims and was a final judgment on the merits. Because Geiger was in privity with his predecessor in interest, who was a party to the prior adjudication, the third requirement of issue preclusion under federal law is met. *See Gurley*, 43 F.3d at 1198. Lastly, the estopped party must have re-

ceived a full and fair opportunity to be heard on the adjudicated issue. *Id.* Here, Geiger's predecessor in interest presented witnesses and offered other evidence in the bankruptcy hearing in an attempt to show that the Tokheims had conducted the sale of the Stock in a commercially unreasonable manner. Thus, Geiger was given a full and fair opportunity to be heard on the issue of commercial reasonableness at the bankruptcy court hearing. Based on an analysis of the four prerequisites of issue preclusion under federal law, the court concludes that the issue of commercial reasonableness is precluded under federal law as well.

### 5. Material fact questions

In the alternative, even if the issue of commercial reasonableness were not precluded under either Iowa or federal law, Geiger has failed to generate material fact questions indicating that the Tokheims have not met their burden of showing that the sale was commercially reasonable. Under Iowa law, a sale in compliance with a judicially approved plan shall conclusively be deemed "commercially reasonable." Iowa Code § 554.9507(2). The issue of plan compliance has already been adjudicated in the bankruptcy court; all parties agreed to this plan, and Geiger has not introduced any facts to indicate any misconduct by the Tokheims in the construction and design of the Plan. Mere assertions that the sale was not commercially reasonable, without the introduction of any evidence supporting these assertions, will not suffice to avoid summary judgment. *See Fed.R.Civ.P.* 56(e), and *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (nonmoving party must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, or admissions, designate specific facts showing a genuine issue for trial).

In addition, the court's interpretation of § 554.9507(2) squares with the general policy behind Article 9 of the U.C.C.—that judicial approval should be conclusive on the issue of commercial reasonableness. *See Bryant*, 407 F.Supp. at 364–65. A court which "collaterally" reviews the commercial reasonableness of the sale "should not at-

tempt to investigate the individual aspects of the sale, except to determine whether the creditor followed the approved procedures or obtained the approval through overreaching or collusion. *Id.* The sale was approved by the bankruptcy court in a judicial proceeding. The bankruptcy court reviewed the circumstances surrounding the sale of the Stock to determine if the parties complied with the approved Plan and if the sale was commercially reasonable. Thus, Geiger has had a full and fair opportunity to litigate these issues and fails to generate any additional facts or claims to justify this court's reconsideration of the issue of commercial reasonableness. *See id.* ("To investigate more deeply is to subvert the drafters' intention that judicial approval should be conclusive on the issue of commercial reasonableness"). Therefore, viewing the facts in the light most favorable to Geiger, and giving him the benefit of all reasonable inferences that can be drawn from the facts, the court finds that Geiger has failed to generate a material fact question on the issue of commercial reasonableness and grants the Tokheims' motion for summary judgment on this issue.

### B. Issue Preclusion—Tortious Interference With Prospective Contract

■ The Tokheims have also argued that Geiger's claim of tortious interference with a prospective contractual relationship is precluded because it is merely another way of alleging the Tokheims' misconduct in conjunction with the sale of the Stock. The Tokheims contend that this issue has likewise been litigated by the bankruptcy court; Judge Hoyt found that the Tokheims conducted the sale of the Stock in compliance with the Plan and that the sale was commercially reasonable. (Transcript, p. 116.). The Tokheims argue that this cause of action was raised in Geiger's original complaint and was specifically dismissed by Judge O'Brien. In his December 30, 1993 order, Judge O'Brien limited the co-trustees' possible claims to events surrounding the public sale. Regarding a claim of tortious interference concerning the sale of the Stock, Judge O'Brien specifically stated

[t]his Court is persuaded that the allegations set forth in this Count suggest tortious interference regarding the sale of the stocks, which occurred after November 20, 1990 and that Plaintiffs have not stated that Defendants in any way interfered with The Debtor's attempts to sell the stock prior to that date.

This Court is not persuaded that Plaintiffs can assert any claims of tortious interference with the stock sale after November 29, 1990 because once The Debtor failed to sell the stock by November 20, 1990, his right to oversee the disposition of those shares was effectively terminated by The Plan. According to The Plan, once The Debtor failed to sell his shares, a sale was required, and Defendants were authorized to conduct the sale. Therefore, this Court is persuaded that Plaintiffs have failed to state a claim upon which relief can be granted relating to Defendants' alleged tortious interference after November 20, 1990.

In any event, however, this Court is not the proper forum for a tortious interference claim. Several Bankruptcy Code sections show that the terms of The Plan, its confirmation and ultimate implementation were and are all issues to be decided by the Bankruptcy Court.... Given the dictates of 11 U.S.C. Sections 1141 and 1142, this Court is persuaded that the proper forum for this tortious interference claim is the Bankruptcy Court.

(Judge O'Brien's Order, pp. 27–28.). The Tokheims maintain that subsequent to Judge O'Brien's order indicating the bankruptcy court as the proper forum to decide this dispute, Geiger did present this claim to the bankruptcy court, raising the same allegations made in his amended complaint. Therefore, the Tokheims argue that Judge Hoyt's decision must be final on these claims and have preclusive effect on this litigation.

Geiger maintains that his allegation of tortious interference with prospective contractual relations refers to interference with the auction contract between Van Dyke and Geiger and the bidder. Geiger argues the Tokheims intentionally and improperly interfered with the Debtor's prospective contrac-

tual relationship with potential bidders by threatening potential bidders with a civil lawsuit against the Bank in order to ensure that the Tokheims would be the sole bidder at the sale. Geiger contends this alleged tortious interference "rendered the auction sale commercially unreasonable." (Resistance to Mot. for Summ.J., p. 4.). Lastly, Geiger asserts that Judge Hoyt did not address this issue in his ruling; thus, he is not precluded from raising them in this action. Having described the parties' arguments concerning this question, the court proceeds to consider whether this issue is precluded by the prior action in the bankruptcy court.

As mentioned, under Iowa law, there are four prerequisites for issue preclusion. Under the first two requirements, the issue concluded must be identical to the issue currently before the court, and the issue must have been raised and addressed in the prior action. *See Israel,* 339 N.W.2d at 146; *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123. At the hearing, Judge Hoyt noted that it appeared that the Tokheims made the necessary disclosures before the public sale. Judge Hoyt further stated that "while the contention is [that the Tokheims] may have hindered bidding, we have no testimony other than Mr. Claussen's which simply said he didn't want to buy a lawsuit. Whether he understood the full ramifications of what he was or was not buying we don't know. But in any event, we would find that at this time the sale was conducted and it was commercially reasonable." (Transcript, p. 116.). Thus, Judge Hoyt did consider whether the Tokheims had hindered bidding by threatening litigation. Since this issue, which was clearly raised and addressed in the prior action, is the same issue currently before the court, the first two requirements have been met.

Also, the issue must have been material and relevant to the disposition of the prior action. *See Israel,* 339 N.W.2d at 146; *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123. Judge Hoyt considered the impact of any hindrance on bidding in the paragraph preceding his ruling that the sale was commercially reasonable and in compliance with the Plan. In this paragraph, Judge Hoyt

articulated the reasons why "the Tokheims ha[d] done everything that they were obligated to do." Thus, the issue of whether the Tokheims interfered with the auction contract and the sale was clearly material and relevant to Judge Hoyt's determination that the public sale was in compliance with the Plan and that the sale was commercially reasonable.

Lastly, the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. *See Israel,* 339 N.W.2d at 146; *Lagle,* 430 N.W.2d at 397; *Hunter,* 300 N.W.2d at 123. Here, the Plan required that an auction be conducted. In order to find that the Tokheims complied with the Plan, Judge Hoyt looked at the circumstances surrounding the auction and determined that the Tokheims made disclosures and that Geiger's contention that the Tokheims hindered bidding at the auction had no merit. Because Judge Hoyt had to consider the Tokheims' conduct regarding the auction to determine that the Tokheims' conduct regarding the sale was commercially reasonable and in compliance with the Plan, this determination was necessary and essential to the judgment. Therefore, based on an examination of the four prerequisites, under Iowa law, the court concludes the bankruptcy court's decision precludes this court's consideration of the issue of tortious interference with a prospective contractual relationship.

Alternatively, under federal law, the first three prerequisites for issue preclusion—(1) that the issue is identical to one in a prior adjudication; (2) that there was a final judgment on the merits in the prior action; and (3) that the estopped party was a party or in privity with a party to the prior adjudication—are met for the reasons discussed previously in this opinion. (See p. 27 for prerequisite (1); p. 23 for prerequisites (2) and (3)); *see also Gurley,* 43 F.3d at 1198; *Arkla Exploration Co.,* 734 F.2d at 356. Under the fourth prerequisite, the estopped party must have received a full and fair opportunity to be heard on the adjudicated issue. *Gurley,* 43 F.3d at 1198. Here, Geiger's predecessor in interest presented witnesses, namely Mr. Claussen, and offered other evidence in the bankruptcy hearing in an attempt to show

that the Tokheims had hindered bidding and interfered with the auction. However, Judge Hoyt was not persuaded by Geiger's claims and found that there was no misconduct by the Tokheims involving the sale and that the sale was commercially reasonable and in compliance with the Plan. In his order, Judge O'Brien indicated that the bankruptcy court was the appropriate place to raise a claim of tortious interference. In accordance with this order, Geiger raised his claim in the bankruptcy court, and Judge Hoyt ultimately rejected it. Thus, Geiger was given a full and fair opportunity to be heard on the issue of tortious interference at the bankruptcy court hearing. Based on an analysis of the four prerequisites of issue preclusion under federal law, the court concludes that the issue of tortious interference with a prospective contractual relationship is also precluded under federal law and grants the Tokheims' motion for summary judgment on this issue as well.

## V. CONCLUSION

Because the decision of the bankruptcy court has preclusive effect on the issue of commercial reasonableness of the sale of the Stock under both Iowa and federal law, the court finds it is precluded from considering this issue. Even if the court were not precluded from considering the issue of commercial reasonableness, Geiger has failed to generate a material question of fact on this issue. Therefore, the court grants the Tokheims' motion for summary judgment on the issue of commercial reasonableness of the public sale of the Stock.

In addition, because the decision of the bankruptcy court has preclusive effect on the issue of tortious interference with a prospective contractual relationship under both Iowa and federal law, the court concludes it is precluded from considering this issue as well. Thus, the court grants the Tokheims' motion for summary judgment on the issue of tortious interference with a prospective contractual relationship.

**IT IS SO ORDERED.**