In re **FORT DODGE CREAMERY COMPANY, Debtor.**

**James H. COSSITT, Plaintiff,**

v.

**FIRST AMERICAN STATE BANK, Defendant.**

**Bankruptcy No. X88–01550F.**
**Adv. No. X89–0213F.**

United States Bankruptcy Court,
N.D. Iowa.

Oct. 11, 1990.

---

**4.**  See Note 1.

James H. Cossitt, Trustee.

Neven Mulholland, Fort Dodge, Iowa, for defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM L. EDMONDS, Bankruptcy Judge.

Plaintiff, Trustee James H. Cossitt (COSSITT), seeks the return of a post-petition payment made by debtor to First American State Bank (BANK). Trial was held June 13, 1990 in Fort Dodge, Iowa. The court now issues this Memorandum of Decision which includes findings of fact and conclusions of law as required by Bankr.R. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

Fort Dodge Creamery Company (FDCC) was engaged in the manufacture and sale of ice cream products. It ceased regular operations in December, 1987. In 1988, it proceeded to wind down corporate affairs by selling previously manufactured products and by selling machinery, equipment and other corporate assets. An involuntary chapter 7 case was commenced against FDCC on October 11, 1988. An order for relief was entered under chapter 7 on February 8, 1989.

FDCC was a borrower of the Bank. On the day the involuntary petition was filed, FDCC was indebted to the Bank for $312,891.00. This figure included $300,000.00 in principal debt and $12,891.00 in accrued interest. The Bank officer primarily responsible for the oversight of the FDCC loan was Ivan Richardson, Jr. He dealt primarily with Bob Loomis, a shareholder and officer of the corporation. Loomis told Richardson that he was going to "pare down" the Creamery's operation—that collateral would be sold and the proceeds would be applied to the company's debt to the Bank. The Bank consented to this arrangement because it believed that Loomis could obtain better prices for the Bank's collateral than the Bank could obtain at a general auction. Richardson consented generally to the sale of collateral and specifically to the sale of motor vehicles.

The Bank's collateral included: inventory, accounts receivable, contract rights, general intangibles, furniture, fixtures, machinery and equipment. FDCC had granted the Bank its security interest in February, 1985. The security agreement (defendant's Exhibit A) provided that the security interest would also attach to after-acquired property. The Bank perfected its security interest by filing a financing statement

with the Iowa Secretary of State on February 14, 1985. The financing statement described the following collateral:

[A]ll inventory, accounts receivable, contract rights, general intangibles, furniture, machinery, and equipment now owned and hereafter acquired including all replacements, substitutions, additions thereto, and proceeds therefrom.

On the same date, Bank filed a financing statement covering fixtures with the Webster County, Iowa Recorder.

FDCC liquidated company vehicles, machinery and equipment, supplies, accounts and other property. The liquidation had begun as early as May 3, 1988. All money from collection of accounts and the liquidation of assets was placed in FDCC's checking account at the Bank. The balance of the account on July 29, 1988 was $14,517.53. Most of the money deposited in the account in May, June and July of 1988 was from the sale or recovery of property in which the Bank held a perfected security interest. This property included accounts, machinery and equipment, inventory, and general intangibles. The general intangibles included tax refunds. *In re American Home Furnishings Corp.*, 48 B.R. 905, 908 (Bankr.Wash.1985). FDCC received tax refunds totaling $10,937.30 during June and July 1988. It was unclear from the evidence whether the Bank had a perfected security interest in certain motor vehicles sold in June, 1988.

On August 1, 1988, FDCC deposited $54,020.00 in its bank account. This money was the proceeds of a settlement between FDCC and the company which licensed the manufacture of Eskimo Pies. That company apparently had cancelled FDCC's right to manufacture and sell Eskimo Pies, and a dispute arose over whether it had to repurchase from FDCC unused supplies and inventory. A settlement resulted in the purchase by the Eskimo Pie company of FDCC's inventory relating to that product. The settlement required a resale of goods and thus resulted in an "account" within the meaning of Iowa Code § 554.9106. The cash from the collection of that account was proceeds under Iowa Code § 554.9306(1).

A $3,590.00 deposit was made into the account on August 15, 1988. The entire amount resulted from the sale of FDCC equipment in which the Bank had a perfected security interest. FDCC made an $8,610.00 deposit on September 1, 1988. This included a $10.00 refund from the Iowa Secretary of State, $600.00 collected from an account debtor, and $8,000.00 from the sale of equipment. A $750.00 deposit was made on September 14, 1988 resulting from the collection of a $500.00 account and the sale of equipment for $250.00. On September 19, 1988, $3,247.00 was deposited in the checking account. It resulted from the sale of equipment. Equipment was also sold on September 30, and the proceeds, $1,884.00, were deposited in the account.

■ The next series of deposits was made after the filing of the involuntary petition. On September 27, 1988, $4,855.71 was deposited. This included a deposit of $618.41 for reimbursement by Rosedale Farms, Inc., a related company, for FDCC's payment of Rosedale's employee benefits. This payment was a general intangible under Iowa Code § 554.9106. The $4,237.00 balance of the September 27 deposit resulted from FDCC's receipt of the cash value of life insurance owned by the company on Allen or Bob Loomis. The Bank had no assignment from FDCC of any rights under these insurance policies. It, therefore, had no security interest in this asset. *Petty v. Mutual Benefit Life Ins. Co.*, 235 Iowa 455, 15 N.W.2d 613, 617 (1944).

A deposit of $639.51 was made on October 28, 1988 as a result of the collection of an account. Four more deposits were made through the end of December, 1988, all resulting from the sale of equipment in which the Bank had a perfected security interest. The deposits were as follows:

| Date | Amount |
|------|--------|
| November 11, 1988 | $2,615.00 |
| November 14, 1988 | 1,382.50 |
| December 12, 1988 | 8,103.75 |
| December 27, 1988 | 3,032.90 |

834

On November 28, 1988, FDCC issued its check no. 4285 to the Bank in the amount of $17,791.66. This was to be applied to interest on the Creamery's indebtedness. The check was negotiated by the Bank and cleared the debtor's account on December 30, 1988. The Bank had not cashed the check immediately upon receipt because Bob Loomis had delivered it to the Bank conditionally. Loomis had been seeking renewal of the FDCC note. He directed that the check not be cashed if the note were not renewed. On December 9, 1988, Richardson wrote Bob Loomis that the loan would not be renewed. Richardson asked Loomis' authorization to apply the check. Sometime between December 9, 1988 and December 30, 1988 Loomis orally gave his permission to Richardson permitting the Bank to negotiate the check. The Bank applied the check to accrued interest through November 28, 1988. In exchange for the payment, the Bank agreed not to call the loan at that time. The Bank would allow FDCC additional time to liquidate assets.

Cossitt seeks recovery of the post-petition payment. The recovery of post-petition transfers is governed by 11 U.S.C. § 549. Under this Code section, the trustee may avoid (1) a transfer (2) of property of the estate (3) which is made after the commencement of the case and (4) that is authorized only under § 303(f) or § 542(c) of the Code or that is not authorized under the Code or by the court. 11 U.S.C. § 549(a), In re Watson, 65 B.R. 9, 11 (Bankr.C.D.Ill.1986).

Section 303(f) of the Code permits a debtor in an involuntary case, notwithstanding § 363, to operate his business and to continue to use, acquire, or dispose of property. This authority continues until the order for relief enters, or until the court otherwise orders. Section 542(c) deals with transfers of property of the estate by third parties without actual notice or actual knowledge of commencement of the case. It is not applicable in this case.

The power of the trustee to avoid a transfer under § 549(a) is limited by its subsections (b) and (c). These exceptions are narrow ones. *222 Liberty Associates v. Philadelphia Electric Co. (In re 222 Liberty Associates)*, 94 B.R. 381, 384 (Bankr.E.D.Pa.1988) *rev'd. on other grounds*, 110 B.R. 686 (E.D.Pa.1989). Subsection (c) deals with transfers of real property and is not applicable in this case. Subsection (b) discusses a transfer exempt from avoidance:

> In an involuntary case, a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

Subsection (b) therefore excepts from the trustee's avoidance power, transfers made after the commencement of an involuntary case but before the entry of an order for relief to the extent of value exchanged after the commencement of the case. Satisfaction of pre-petition debt, therefore, is not within the exception. *Smith v. Mark Twain Nat. Bank*, 805 F.2d 278, 292 (8th Cir.1986).

It is undisputed that the debtor's payment to the Bank was a transfer which was accomplished after the commencement of the involuntary case but before the entry of the order for relief.

█ The initial dispute between the parties is whether the transfer involved property of the estate. The Bank contends it did not because the property liquidated and the resulting proceeds were fully encumbered. The court rejects this argument. The definition of property of the estate is broad. It includes all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). This includes encumbered property. *In re W.L. Mead, Inc.*, 42 B.R. 57, 59 (Bankr.N.D.Ohio 1984). Thus the proceeds of debtor's property turned over to the Bank after the commencement of the case was property of the estate at the time of the transfer.

■ The transfer was authorized by 11 U.S.C. § 303(f) which permits the debtor up until the entry of an order for relief to operate its business and to dispose of its property. This authority is given notwithstanding § 363 'of the Code which permits a trustee to sell property of the estate, other than in the ordinary course of business, only after notice and hearing. 11 U.S.C. § 363(b)(1). Debtor's liquidation of its assets and payment to the Bank were not in the ordinary course of its business, and were therefore not authorized under 11 U.S.C. § 363. Even though the payment may have included post-petition interest, the payment would still not be in the ordinary course of business. *In re J.T.L., Inc.,* 36 B.R. 860, 862 (Bankr.E.D.Mo.1984). The transfer to the Bank was in partial satisfaction of pre-petition debt and was not authorized by the court.

The court, therefore, concludes that unless the exception of § 549(b) is applicable, the trustee is entitled to avoid FDCC's payment to the Bank. The Bank contends that it gave value for the payment and thus the payment is immune from the trustee's avoiding power. Section 549(b) does protect the transfer from avoidance to the extent of any value given in exchange for such transfer after the commencement of the case. *In re Brooklyn Overall Co., Inc.,* 57 B.R. 999, 1002 (Bankr.E.D.N.Y. 1986).

The Bank asserts that the value exchanged was its forbearance from demanding full payment of the note or seeking its collection on and after its due date of November 28, 1988. The Bank's forbearance from collection of its note would not be considered "new value" under § 547(a)(2), dealing with preferences. *American Bank of Martin County v. Leasing Service Corp. (In re Air Conditioning, Inc. of Stewart),* 845 F.2d 293, 298 (11th Cir.1988) *cert. denied,* 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988); *In the Matter of Installation Services, Inc.,* 101 B.R. 282, 285 (Bankr.N.D.Ala.1989); *Charisma Investment Co., N.V. v. Air Florida System, Inc.,* 68 B.R. 596, 601 (S.D.Fla.1986) *aff'd.,* 841 F.2d 1082 (1988).

■ Section 549(b) does not completely define "value" but it does indicate that "value" includes services but does not include satisfaction or securing of a debt that arose before the commencement of a case. Section 549(b) is intended to protect contemporaneous exchanges for value to permit continued operation of the business during the "gap" period. It is not intended to protect post-commencement payment of pre-petition debt. The court, therefore, concludes that the Bank's agreement to postpone demand or collection on the promissory note was not "value" within the meaning of 11 U.S.C. § 549(b).

■ The Bank claims that the transfer is protected from the trustee's avoiding powers under § 549 because the payment was made from proceeds of debtor's property in which the Bank held a perfected security interest. The trustee counters this contention with the assertion that the Bank's perfected security interest in the proceeds was lost when debtor commingled the proceeds of the Bank's collateral with other monies. For this proposition, trustee cites Iowa Code § 554.9306(4)(d). This section of the Uniform Commercial Code as adopted in Iowa provides that in the event of insolvency proceedings instituted against a debtor,

[a] secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

\*       \*       \*       \*       \*       \*

(d) in all cash and deposit accounts of the debtor, in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph "d" is

(i) subject to any right of setoff; and

(ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings ...

On October 11, 1988, the date of the commencement of the involuntary case, FDCC had $50,953.88 in its checking account. After the commencement of the

case, FDCC made six deposits to the account, totaling $20,629.37. All of these deposits, save one, resulted from the liquidation of debtor's property which was secured to the Bank. The only assets liquidated in which the Bank did not hold a perfected security interest were the life insurance policies. The liquidation of the cash value after payment of policy loans resulted in a $4,237.30 deposit on October 27, 1988.

■ There is no question that after the commencement of the case debtor commingled proceeds from the sales of collateral with proceeds of property not pledged to Bank. The court believes, however, that this may be irrelevant to the Bank's ability to identify these proceeds under the Uniform Commercial Code. Commingling of proceeds is not fatal to the tracing of a security interest where there has been no insolvency proceeding. *Coachmen Industries, Inc. v. Security Trust & Savings Bank of Shenandoah*, 329 N.W.2d 648, 650 (Iowa 1983), citing *Michigan Nat. Bank v. Flowers Mobile Home Sales, Inc.*, 26 N.C. App. 690, 217 S.E.2d 108, 17 U.C.C. Reporting Service 861 (1975).

■ The elimination of a secured creditor's ability to trace and therefore to identify the proceeds as proceeds of his collateral is affected by the filing of an insolvency proceeding. Iowa Code § 554.9306(4). That Code section may not apply to proceeds received and commingled after the filing of the case. By its liquidation of collateral after the commencement of bankruptcy, FDCC obtained and deposited in its account $16,392.07. Tracing principals might allow the Bank to show that the money paid to it included such proceeds. It is less clear whether the money in the account on the date of commencement of the case included commingled proceeds. The court does not consider that post-petition commingling of proceeds and its effect on the Bank's security interest was adequately addressed by the parties. Nor does the court believe that there was sufficient evidence introduced to permit a determination of whether at the time of bankruptcy the bank account contained commingled proceeds. The court, however, need not decide the effect of commingling at this time. That the post-petition payment might have been made from the proceeds of liquidation of the transferee's collateral is not a defense to the trustee's avoidance power under § 549(a). See *Davis v. Valley Federal Savings & Loan (In re Wilson)*, 52 B.R. 639 (Bankr.E.D.Tenn.1985); but see *Dave Noake, Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.)*, 45 B.R. 555 (Bankr.D.Vt.1984).

Although § 549(b) does not provide an exception to the turnover merely because the property transferred may have been encumbered by the transferee, the return of the money to the trustee does not in and of itself avoid the Bank's avoidable lien on the funds. To the extent that the money can be shown to be identifiable cash proceeds of the Bank's collateral, the Bank's security interest in it continues.

### SUMMARY

FDCC's transfer to the Bank of $17,-791.66 on December 30, 1988 may be avoided under 11 U.S.C. § 549(a) as a post-petition transfer authorized only under § 303(f) of the Code and as a transfer not authorized under Title 11 or by the court. The transfer is not excepted from avoidance under § 549(b) because of the Bank's forbearance in demanding or collecting payment on the note. A security interest in the transferred property, even if proven, is not a defense to the turnover under § 549(a).

Any security interest of the Bank in the monies returned to the trustee will continue to exist, absent a determination that such security interest is subject to the trustee's "strong arm powers" under § 544, or is avoided under the trustee's other powers.

### ORDER

Judgment shall enter that the transfer by Fort Dodge Creamery Company to First American State Bank of $17,791.66 is avoided. James H. Cossitt shall recover from First American State Bank the sum

of $17,791.66. The trustee shall recover his costs.

SO ORDERED.