**Robert W. PEPMEYER, Debtor.**

**Sheryl Youngblut in her sole capacity as Trustee, Plaintiff,**

**v.**

**Robert W. Pepmeyer, Erika K. Pepmeyer, Defendants.**

**Bankruptcy No. 00–02486–C.**
**Adversary No. 01–9027–C.**

United States Bankruptcy Court, N.D. Iowa.

Feb. 15, 2002.

**28.** *Id.* at 409 n. 6 (*quoting* 28 U.S.C. § 1292(b)).

**29.** 11 U.S.C. § 1112(b)(4).

Dan Childers, Laurie L. Dawley, David Thinnes, Cedar Rapids, IA, for creditors.

Eric W. Lam, Cedar Rapids, IA, for trustee.

John M. Titler, Cedar Rapids, IA, for debtor.

## ORDER RE RENEWED MOTION FOR SUMMARY JUDGMENT

PAUL J. KILBURG, Chief Judge.

This matter came on for telephonic hearing on January 4, 2002. Attorney Eric Lam appeared for Trustee/Plaintiff Sheryl Youngblut. Attorney John Titler appeared for Debtor/Defendant Robert W. Pepmeyer. After hearing arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

### STATEMENT OF THE CASE

In June 1994, Debtor purchased an annuity contract from Northwestern Mutual Life Insurance Company (Northwestern Mutual). The contract designated Debtor Robert Pepmeyer as "owner" with his daughter, Erica Pepmeyer, a minor, as annuitant and "direct beneficiary of pay-

ment at maturity." The contract provides in Section 4, "Ownership," that "[a]ll contract rights may be exercised by the Owner, his successor, or his transferee" without the consent of the beneficiary.

In September 2000, Debtor directed his Northwestern Mutual agent to change the designation of ownership to Erika. Erika turned 18 years old in August 2000. Debtor subsequently filed his Chapter 7 petition on September 29, 2000. In early November 2000, Debtor signed the ownership designation form changing ownership to Erika. The contract provides, in Section 4, that for purposes of transfer of ownership, "[t]he transfer will then take effect as of the date it was signed." Northwestern Mutual accepted the form for ownership change on November 21, 2000. The annuity has a present value of approximately $11,000.

Trustee asserts no issues of material fact are in dispute, as follows: Debtor failed to create any ownership interest in Erika at the time of purchase of the annuity. Debtor retained sole ownership of the annuity in 1994, and the only transfer in the annuity occurred in September or November 2000 when Debtor changed the designation of ownership. Debtor failed to follow appropriate procedures for a transfer to a minor in 1994, including those provisions in Iowa's Uniform Transfer to Minor's Act. To effectuate a transfer under the Act, Debtor needed to designate himself as custodian or trustee for Erika. He failed to do this, and no interest in the property vested in Erika. Therefore, Debtor had the only interest in the property at the time of its acquisition.

Trustee asserts, pursuant to § 548(a)(1)(B), that if the change of designation of ownership was within the one-year statutory period for a prepetition constructively fraudulent transfer, the transfer is avoidable and the value of the annui-ty is included in the estate. Alternatively, she argues the change in ownership in November 2000 was a § 549(a) postpetition transfer of property of the estate which must be avoided for the benefit of the estate.

Debtor argues that material issues exist. He asserts the change in ownership of the annuity in November 2000 does not constitute a transfer to Erika. Debtor contends that Erika, the annuitant and beneficiary, has held the sole interest in the property since the annuity was purchased in 1994. Debtor argues that Iowa law applies.

## CONCLUSIONS OF LAW

A motion for summary judgment in an adversary proceeding in bankruptcy is governed by Rule 56 of the Federal Rules of Civil Procedure. Fed R. Bankr.P. 7056. To warrant summary judgment, the moving party must show: 1) there are no genuine issues as to any material fact, and 2) the moving party is entitled to judgment as a matter of law. *Geiger v. Tokheim*, 191 B.R. 781, 786 (N.D.Iowa 1996) (citing Fed.R.Civ.P. 56). When applying these elements, a court must scrutinize all evidence "in the light most favorable to the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The court's primary focus is to determine whether any genuine issues exist for trial under the governing law. *Barz v. Geneva Elevator Co.*, 12 F.Supp.2d 943, 951 (N.D.Iowa 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## PREPETITION OR POSTPETITION AVOIDABLE TRANSFERS

■ Trustee asserts alternative theories why the annuity contract is avoidable. First, she asserts § 548(a)(1)(B) applies.

To prove an avoidable prepetition transfer occurred, Trustee must prove the following five elements under § 548(a)(1)(B):

(1) an interest of the debtor in property; (2) was voluntarily or involuntarily transferred; (3) within one year of filing bankruptcy; (4) where the debtor received less than reasonably equivalent value; and (5) debtor was insolvent at the time of the transfer or became insolvent as a result thereof.

*In re Grady*, 202 B.R. 120, 123 (Bankr. N.D.Iowa 1996).

▪ Second, Trustee asserts that if § 548(a) is determined to be inapplicable, § 549(a) controls and is dispositive of the case. To avoid a postpetition transfer of property of the estate under this section, Trustee must establish that: 1) a transfer of property of the estate occurred; 2) made after the commencement of the case and 3) that is not authorized under the Code. *In re Fort Dodge Creamery Co.*, 121 B.R. 831, 834 (Bankr.N.D.Iowa 1990).

### TRANSFER OF PROPERTY

▪ The occurrence of a transfer of property is one of the elements of both § 548(a)(1)(B) and § 549(a). This element contains two separate concepts. The concept of transfer is controlled by Federal law. *In re Kloubec*, 247 B.R. 246, 253 (Bankr.N.D.Iowa 2000), *aff'd* 268 B.R. 173 (N.D.Iowa 2001). The Bankruptcy Code defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." 11 U.S.C. § 101(54). The term "property" is not defined in the Bankruptcy Code and is, therefore, subject to definition under state law. *Id.; Nobelman v. American Sav. Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Congress has left the defining of property rights in bankruptcy to the states. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Thus, Iowa law determines the extent of Debtor's and the bankruptcy estate's property interest in the annuity.

### IOWA PROPERTY LAW

▪ To determine the issues presented in this case, the Court must determine applicable Iowa law in three areas: (1) annuity contracts as property; (2) contract law and principles of contract interpretation; and (3) principles of gift law. Under Iowa common law, property is defined as "everything of value, both tangible and intangible, capable of individual right or ownership." *Benton v. Slater*, 605 N.W.2d 3, 6 (Iowa 2000). Rights in contracts are included within this definition of property. *Id.* Annuities are contracts wherein premiums are paid by the purchaser to the issuer for the consideration of creating payments to the beneficiary. *Nations-Bank of N.Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 255, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995).

▪ To ascertain the meaning of contract terms, Iowa courts look to the parties' intent in drafting the contract. *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 416 (Iowa 1997). The parties' intent is derived from the contract itself; in the absence of any ambiguity, courts will enforce the contract "as written." *Howard v. Schildberg Constr. Co.*, 528 N.W.2d 550, 554 (Iowa 1995).

▪ In Iowa, for a donor to gift property to a donee, three requirements must be met: (1) donative intent (2) delivery and (3) acceptance. *Gray v. Roth*, 438 N.W.2d 25, 29 (Iowa App.1989). For donative intent to exist, the donor must divest all control and dominion over the subject of the gift. *In re Estate of Crabtree*, 550 N.W.2d 168, 170 (Iowa 1996). "The trans-

fer of dominion and control must be actual—a present, not a future transfer." *Id.* While interpreting an insurance policy, the Iowa Supreme Court has stated that a beneficiary has no vested interest in a policy, rather a "mere expectancy", where the policy holder holds the right to change the designation of the beneficiary. *Sorensen v. Nelson,* 342 N.W.2d 477, 480 (Iowa 1984); *see also Penn Mutual Life Ins. Co. v. Mulvaney,* 221 Iowa 925, 265 N.W. 889, 893 (Iowa 1936) (holding that when the beneficiary is "dependent upon the will and pleasure of the insured" no property interest exists to "be the subject of a gift").

■■■■■ Trustee asserts Debtor's creation of the annuity with Erika as beneficiary fails as a gift based on Debtor's failure to follow the requirements of Iowa's Uniform Transfer to Minors Act. The UTMA, however, does not state that failure to comply with the Act negates a gift. Iowa Code § 565B.2 (2001). Case law indicates "[t]he Act was passed in order to facilitate the easy inter-vivos transfers of assets to minors." *In re Merrill,* 246 B.R. 906, 913 (Bankr.N.D.Okla.), *aff'd* 252 B.R. 497 (10th Cir. BAP 2000). Compliance with the Act constitutes prima facie evidence that a gift has been made and intended. *In re Marriage of Hendricks,* 681 N.E.2d 777, 781 (Ind.Ct.App.1997). The Act, however, is not the only method by which to effectuate a gift. Compliance is merely evidence that a conveyance of a gift has occurred.

## CONCLUSIONS

In order to address the issues raised in Trustee's complaint, the Court must examine Debtor's conduct during two separate time frames: (1) the time period surrounding the creation of the annuity contract in 1994; and (2) the time period immediately before and after the filing of Debtor's

Chapter 7 bankruptcy petition in September 2000.

Debtor purchased this annuity contract in June 1994. Debtor seems to assert that the contract terms themselves create a property interest in Erika Pepmeyer, or alternatively, that he intended a gift of this contract to her at the time of its creation. The Court has previously set out the appropriate contract and gift law principles in this opinion. It is the conclusion of this Court that neither theory is compelling.

■■■■ The plain language of the annuity contract identifies the "owner" as Debtor, and the "annuitant/beneficiary" as Erika. The contract provides that the owner is assigned all contract rights and may exercise them "without the consent of any beneficiary". Additionally, Section 6.2 of the contract provides that the owner has the right to change beneficiaries. Application of Iowa law on contract interpretation to the uncontested facts leads to the undeniable conclusion that the terms of the annuity are clear and unambiguous. There is no uncertainty which would accommodate an alternative construction of the contract. If Debtor had intended his daughter to be designated as an owner rather than an annuitant, he could have easily provided for this option. Section 7A of the Deferred Annuity Application allowed Debtor to select various options. Debtor could have clearly indicated his intent to have Erika own the annuity contract. However, Debtor elected to check the box marked "Other" and named himself as the owner. It is the ultimate conclusion of this Court that as of the time of its creation, under Iowa law, Debtor created a contract in which he was the sole owner and his daughter was merely beneficiary.

■■■■ Likewise, applying Iowa gift law principles, Debtor maintained sole interest in the property at the time of the creation of the annuity contract. The

transaction fails to satisfy one or more of the elements necessary to create a gift. As owner of the annuity contract, Debtor maintained exclusive power to unilaterally change the beneficiary. At no time did he relinquish control and dominion over the annuity contract to Erika. There is nothing in the contract itself which implies that Debtor had any intent to donate and convey a gift to Erika at the time of the creation of the annuity contract in 1994. The most that can be said of this arrangement is that Erika had a mere expectancy of receiving the funds from the annuity upon its maturity. Neither Iowa common law concerning gifts nor the Uniform Transfer to Minors Act allows the result sought by Debtor. Iowa law is clear that a mere expectancy is insufficient to create a completed gift.

To summarize the transaction as it occurred in June 1994, Debtor purchased an annuity contract in which he remained the owner. Though he did designate Erika as a beneficiary, he retained all indicia of ownership including the right to redesignate the beneficiary if he elected to do so. There is nothing to indicate that Debtor attempted to or did in fact create a completed gift to Erika at the time of the creation of this contract. As such, from the time of the creation of the contract until the time period surrounding the filing of the Chapter 7 bankruptcy petition, Debtor remained the sole and exclusive owner of this contract.

The second relevant time frame involves Debtor's conduct immediately before, during and after the filing of the Chapter 7 petition. The facts are uncontested that in early September 2000 Debtor directed that Erika be designated as the owner of the annuity contract. However, before the change could occur, Debtor filed his Chapter 7 petition on September 29, 2000. It was not until early November 2000 that Debtor signed the ownership designation form changing ownership to Erika. Northwestern Mutual accepted the change of ownership form on November 21, 2000. The contract provides that transfer of ownership occurs as of the date the transfer form was executed.

Trustee asserts that if the Court concludes that a transfer occurred in September 2000, during the year prior to the date the petition was filed, it constitutes a constructively fraudulent transfer under § 548(a)(1)(B). She further alleges that if the Court determines the transfer to be postpetition when Debtor signed the change of designation of ownership form, it is controlled by § 549(a) of the Code. Under either alternative, Trustee argues there are no material facts in controversy and the transfer is avoidable, requiring that the property be brought back into Debtor's estate for administration.

As the record establishes, Debtor directed a change of designation of ownership in September 2000. To the extent this constitutes a transfer, Count II of Trustee's Complaint seeks avoidance under § 548(a)(1)(B). The Court has previously discussed the requisite elements of a fraudulent transfer under § 548. It is noted that elements (2), (3), (4), and (5) are not contested.

 Debtor was the sole owner of the annuity. Debtor did not complete a gift to Erika at the time the annuity was originated. In September 2000, Debtor directed his agent to change the designation of ownership. To the extent this constitutes a transfer under the Bankruptcy Code, it is avoidable under &sect;548(a)(1)(B). Such direction to the Northwestern Mutual agent to change ownership, whether a gift or an outright transfer, was within one year prepetition, while Debtor was insolvent, and for which Debtor received less than reasonably equivalent value.

Before the change of ownership could be carried out, Debtor filed his Chapter 7 petition. It was not until early November that Debtor signed the ownership designation which was accepted by Northwestern Mutual on November 21, 2000. The Court finds this constitutes a transfer under the Bankruptcy Code. Count IV of Trustee's Amended Complaint seeks avoidance under & sect;549(a), asserting the transfer of the annuity occurred after the commencement of the case and was not authorized under the Code.

According to the annuity contract, ownership changed from Debtor to Erika when Debtor signed the change of designation of ownership form in November 2000. This constitutes a transfer of property of the estate which was made after the commencement of the case and was not authorized under the Bankruptcy Code. The transfer attempted to terminate Debtor's interest in this annuity contract. The Court concludes this transfer is avoidable under § 549(a). The annuity contract with Northwestern Mutual is property of the estate subject to administration by the Trustee.

**WHEREFORE,** for all of the reasons set forth herein, the Court finds that the Motion for Summary Judgment by Trustee should be and is hereby GRANTED.

**FURTHER,** the Court concludes that Debtor made an unauthorized postpetition transfer of property which is avoidable under § 549(a) as set out in Count IV of Trustee's Amended Complaint.

**FURTHER,** to the extent Debtor's direction to his agent in September 2000 to change ownership of the annuity to Erika Pepmeyer may constitute a transfer, it is nevertheless avoidable under § 548(a)(1)(B) as set out in Count II of Trustee's Complaint.

**FURTHER,** the annuity contract between Debtor Robert Pepmeyer and Northwestern Mutual Life Insurance Company is property of Debtor's estate subject to administration by the Trustee.

**FURTHER,** Debtor and any other interested parties shall turn over the contract to Trustee and execute any documents necessary to allow Trustee to administer this asset.